CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

October 15, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **DARRELL JASON DAVID HARRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00648 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CPT. KELLY REDD, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Darrell Jason David Harris, Pro Se Plaintiff; Brian J. Brydges, JOHNSON, AYERS & MATTHEWS P.L.C., Roanoke, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that jail officials refused to treat him for Hepatitis C because of expense.  After reviewing the Complaint and the evidence provided to support the defendants' Motion for Summary Judgment, I will grant the defendants' motion.

### I.

The claims in this case arose when Harris was confined at the Henry County Adult Detention Center (ADC), starting in July 2023 as a pretrial detainee.  He alleges that he was not taking medication then, but that he reported to staff that he has Hepatitis C and needed to see a doctor about it and his sugar levels.  He believed one or the other of these conditions was causing him abdominal pain, nausea, and

light-headedness.  He allegedly saw "Wellpath Provider Dr. Spencer" in August 2023.[1]  Compl., Additional Supporting Facts, 1, ECF No. 1-1.  The doctor said Harris' sugar was fine, but told him he would not be treated for Hepatitis while at ADC because of the expense.  Harris later reported his desire for Hepatitis treatment through grievances and appeals addressed by Captain Kelly Redd and County Sheriff Wayne Davis, who "basically seconded" the doctor's denial of treatment.  *Id.* at 1.

In the Complaint, Harris sued the doctor, Redd, and Davis.  I earlier dismissed all claims against Dr. Spencer pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, after the court was unable to accomplish service on him.  Defendants Redd and Davis filed a Joint Answer and Motion for Summary Judgment.  The court notified Harris of the motion and of his opportunity to respond, but he has failed to do so within the allotted time.[2]  Therefore, the motion is ripe for consideration.

In support of the Motion for Summary Judgment, Redd and Davis present the following evidence from the ADC staff and the medical records that are undisputed.

---

[1]  The defendants present evidence that "a 'Dr. Spencer' never has been employed by Wellpath to work at the ADC.  Mem. Supp. Mot. Summ. J. Redd Decl. ¶ 11, ECF No. 27-1.

[2]  Harris was mailed a *Roseboro* notice on May 13, 2024, advising him that if he did not respond, "the Court will assume that Plaintiff has loss interest in the case, and/or that Plaintiff agrees with what the Defendant states in their responsive pleading(s)."  Notice, ECF No. 28.

The ADC handbook, explained to each inmate upon arrival, indicates that staff will address preexisting medical conditions "**Only** if they present a serious risk to life of [sic] health.  All expenses incurred due to a pre-existing condition will be the responsibility of the inmate."  Mem. Supp. Mot. Summ. J. Kelly Decl. ¶ 10, ECF No. 27-1.  It also indicated that medical services "deemed a medical emergency by jail medical staff" will be "provided at no cost" to the inmate.  *Id.*[3]  Harris acknowledged in writing that staff explained these policies to him.  The Medical Observations Report completed by Nurse Adams when Harris entered the jail indicates that Harris was not jaundiced, was not carrying any mediation, and denied being under any medical treatment.  During a medical screening of Harris on July 27, 2023, Nurse Nolen reported that he denied having or ever having hepatitis and denied having been prescribed medication that he was not taking.  Harris signed this document.

On August 5, 2023, Harris complained of "low sugar," "no energy, "light head," and "nausea," possibly from hypoglycemia.  *Id.* ¶ 17.  On August 10, 2023, Harris saw Kelly Fuller, LPN, who noted Harris' belief that his occasional light-headedness was caused by being hypoglycemic.  Fuller ordered lab work and daily

---

[3]  I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion and Order, unless otherwise noted.

blood sugar checks.  Fuller did not note that Harris reported having hepatitis.  Lab work results showed sugar levels to be within normal limits.

On August 21, 2023, Harris submitted a medical request seeking treatment for Hepatitis C.  In another request on August 22, 2023, Harris claimed his nausea, lack of energy, and light-headedness might be related to his "Hep C."  *Id.* ¶ 23.  He asserted that he had been diagnosed seven months prior at Greenville Correctional Center and that his high enzyme levels indicated he had had it for some time.  Harris also reported being told that the ADC "does not treatment" [sic] Hepatitis C because of expense."  *Id.*  Staff scheduled him to see a doctor.  Redd and Davis first learned that Harris claimed to have Hepatitis C through grievances and appeals he filed in late August and early September 2023.

Fuller examined Harris on September 13, 2023.  Fuller noted Harris' report of having Hepatitis C but not being on any treatment for it — the first time Hepatitis C was documented in the ADC progress notes for Harris.  He said he was going to start treatment while on probation but was locked up again after four months of release.  Fuller gave Harris medication for nausea, urged him to increase fluid intake, and submitted a referral request for him to be seen by a gastroenterology specialist for loss of appetite, dark urine, nausea, and Hepatitis C.

Fuller saw Harris again on October 17, 2023, to discuss lab results.  Fuller's examination showed no enlarged liver or other abdominal concerns.  She assessed

him as having Hepatitis C, advised that staff would monitor his labs, but did not recommend any medication or other treatment for the Hepatitis C. Wellpath policy for Hepatitis C is initially self-care, supportive treatment, and patient education. The condition "may be treated with antiretroviral medications" if the provider deems such treatment to be medically necessary, in consultation with Wellpath's "HCV Committee." *Id.* Ex. F, at 3, ECF No. 27-7. On October 18, 2023, Harris was transferred to a different jail facility.

## II.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgement, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," and the movant defendant "has the initial burden to show absence of evidence to support the nonmoving party's case." *Shaw ex rel. Bowen v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A pro se litigant's verified complaint must be considered as an affidavit and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d

493, 498 (4th Cir. 2021).  The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251–52.

Because Harris was a pretrial detainee while at ADC, his medical claims under § 1983 must be assessed under the Due Process Clause of the Fourteenth Amendment.  *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (holding due process protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose").  Thus, Harris must show that he had "a medical condition or injury that posed a substantial risk of serious harm," that each defendant "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed," each defendant "knew or should have known (a) that the detainee had that condition" and that the defendant's response "posed an unjustifiably high risk of harm," and "as a result, the detainee was harmed."  *Short ex rel. Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).  Furthermore, to the extent that non-medical jail staff are made aware of an inmate's medical conditions or concerns, they are entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course

of treatment deemed necessary for that inmate at that time. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995). Such non-medical staff could be found liable if they intentionally interfered with a medical treatment ordered by a provider. *Id.*

Defendants Redd and Davis agree that Hepatitis C is a serious medical condition and thus satisfies the first component of the legal standard. The defendants disagree, however, that they knew or should have known that Harris had Hepatitis C that needed immediate treatment. As indicated, Redd and Davis learned that Harris had Hepatitis C first in late August and early September through his grievances. At that time, although ADC providers had examined Harris for some complaints, nothing in the ADC medical records indicated that Harris had been diagnosed by a provider there as having Hepatitis C or as requiring treatment. Thus, Redd and Davis were entitled to rely on the medical judgments of the providers who had addressed medical complaints from Harris since his arrival in late July 2023. *Id.*

Moreover, the record does not support a finding that Redd and Davis knew of or could have addressed the risk that the Hepatitis C diagnosis posed to Harris before he was transferred. Fuller reviewed with Harris the results of his liver profile and diagnosed him with Hepatitis C on October 17, 2023. The next day, October 18, 2023, Harris was transferred to a different jail facility. Thus, Redd and Davis, even if they had received notice of this diagnosis immediately, had no time to act on it before Harris left their custody. Moreover, even after diagnosing Harris with

Hepatitis C, Fuller told him that staff would monitor his labs.  But Fuller did not recommend medication or other condition-specific treatment for Harris.  Indeed, initial treatment for Hepatitis C under Wellpath policy was, essentially, self-care, education, and monitoring.

Finally, Harris also fails to demonstrate that the ADC has a policy to deny medication or other treatment for Hepatitis C.  While Wellpath provides testing and monitoring of the condition, it provides for treatment only when a provider determines that such treatment is medically necessary.  No provider determined a medical necessity for Hepatitis C treatment while Harris was at ADC.  The defendants were entitled to rely on those medical judgments.

For the stated reasons, I conclude that Harris has not stated facts on which he could prevail at trial against these defendants and that they are, thus, entitled to summary judgment as a matter of law.

### III.

In accordance with the foregoing, it is **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 26, is GRANTED.

A separate Judgment will issue herewith.

ENTER:  October 15, 2024

/s/  JAMES P. JONES
Senior United States District Judge